SAMUEL, Judge.
In April of 1950 an ordinance was adopted by the City of New Orleans to cooperate in the development of a housing project contemplated by Pontchartrain Park Homes, Inc. and, in connection therewith, on January 24, 1955, the Sewerage and Water Board of New Orleans entered into a contract with Pontchartrain involving the installation of sewerage collection, water distribution and drainage systems in the subdivision. This contract stipulated, among other things, that the Board would furnish to Pontchartrain engineering plans, specifications, contract documents and inspection for said systems, the object being that “ * * * said work shall be done in accordance with plans and specifications of the Sewerage & Water Board and under the supervision and inspection of its en *130 gineers”. Pontchartrain entered into a general contract with Keller Construction Corporation to do the work and Keller entered into a sub-contract with George W. McCoy & Co. to do that part of the work necessary to the installation of the sewerage collection system.
After the completion of McCoy’s work leaks due to pipe breakage were found in the sewer line and Keller called upon McCoy to repair the same. McCoy repaired seven of the leaks but left the job and refused to make any further repairs upon discovering that Keller and Pontchartrain would not reimburse it for the cost thereof. Keller then made nine additional similar repairs and the Sewerage & Water Board also repaired a number of breaks which developed after the job was finally accepted by the Board.
Keller then sued McCoy and its insurer for the cost incurred by the former in repairing the nine breaks, on the theory that the need for such repairs was due to McCoy’s fault. McCoy and its insurer denied the charges of fault and McCoy reconvened against Keller for the cost of the seven repairs made by it, reimbursement for the cost of lowering a manhole and certain other costs involved in sewer connections allegedly caused as a result of changes made by the Sewerage & Water Board in its plan after McCoy’s bid had been accepted.
Thereupon Keller filed a third party complaint against Pontchartrain seeking to recover from Pontchartrain the amount of any judgment awarded against it in favor of McCoy in the event that such judgment should result from the court holding that the cost or expense resulted from defective plans furnished by Pontchartrain to Keller and, in turn, by Keller to McCoy.
On these issues the trial court awarded judgment in favor of Keller on the main demand and against McCoy and its insurer as pi'ayed for, dismissing all incidental demands and third party complaints except a part of that demand relating to the cost of lowering the manhole. From this judgment appeals were taken to the Supreme Court of Louisiana.
The Supreme Court (Keller Construction Corp. v. George W. McCoy & Co., 239 La. 522, 119 So.2d 450) reversed the judgment of the trial court and held that the breaks in the line resulted from defective sewer plans and specifications provided by the Sewerage & Water Board, specifically that the breaks were caused by specifications of pipe of insufficient strength, and also held that the sufficiency of said plans and specifications had been warranted by Pontchartrain to Keller and, in turn, by Keller to McCoy. The Supreme Court remanded the case to the trial court for formal amendments to the pleadings concerning the liability of the Sewerage & Water Board to Pontchartrain and trial thereon. As the pleadings had not made the Sewerage & Water Board a defendant as to Pontchartrain the court expressed no opinion on that point.
On remand the Board filed an exception of no right or cause of action based on its alleged governmental immunity, and after the exception and the merits had been submitted on the evidence adduced at the previous trial, the district court rendered judgment in favor of McCoy and against Keller and Pontchartrain and in favor of Pontchartrain and against the Board. From this judgment the Board has appealed. •
After the. judgment by the Supreme Court in favor of McCoy and against Keller had become final, the latter paid that judgment, including all docket costs, but refused to pay the cost ($1,993.59) of the premium for the suspensive appeal bond furnished by McCoy in perfecting its appeal. McCoy filed a rule against Keller in the trial court to show cause why the amount of the premium should not be taxed as cost and, after a hearing thereon, judgment was rendered in favor of Keller and against McCoy, dismissing the latter’s rule. McCoy has appealed from this judgment.
*131 We first address ourselves to the appeal by the Board. In this court appellant contends that the judgment against it should he reversed for the following reasons: (1) that it did not warrant the plans and specifications to Pontchartrain; (2) alternatively, if the court holds that it did warrant its plans and specifications, such action was ultra vires, and such warranty was therefore null and void; (3) that the Board acted solely in its governmental capacity and therefore is immune from liability; (4) that the plans and specifications were in the nature of rules and regulations of the Board, acting under its police power, and no liability could flow therefrom; and (S) that the contract was without consideration insofar as the Board was concerned.
Before discussing these contentions we feel it necessary to point out that, although the Supreme Court expressed no opinion regarding the liability of the Board, it necessarily made findings and reached conclusions, both of fact and law, which are binding upon us. In addition, on some occasions the language used by that court makes its intent and purpose clear and we feel that on such occasions we are obligated to follow that language. The Supreme Court knew that the Board sought and would seek to escape responsibility and we do not believe that it would send the case back to the district court so that Pontchartrain could assert its claim against it only to conclude in the end that in no event could the Board be held liable for its fault.
In connection with its first contention, and in view of the fact that the Supreme Court has held that Arts. 2756 and 2758 of the LSA-Civil Code, which articles are concerned with construction contracts, were applicable to this case, appellant argues that, in order for the Board to be held as warrantor of its plans and specifications, the court must find the Board is an owner or undertaker in accordance with those articles. We cannot agree with this. In its opinion the Supreme Court was concerned with that portion of the case having to do only with Pontchartrain, Keller and McCoy, and their resulting liability as owners or undertakers within the meaning of the codal articles. There is no such necessity here with reference to the Board. All other questions pretermitted, it is sufficient for liability on the Board's part if it occupied the position of architect or engineer and entered into the contract in that respect, a fact already determined by the Supreme Court (239 La. at page 541, 119 So.2d at page 457), for the court refers to the Board as the architect and engineer of Pontchartrain, the owner, and specifically says: “The work involved technical engineering skill and the plans were made by expert professional men engaged by the owner”. Certainly it could not be successfully argued that a private engineer or architect would not be liable if he had been employed and had prepared improper plans and specifications which resulted in damage. The Supreme Court has answered the first contention.
Appellant’s second and fourth contentions, relative to the Board’s action being ultra vires and, in any event, under its police power, also appear to be answered by the Supreme Court opinion. The contentions are closely related and are answered by the following language which appears in 239 La. at page 565 and 119 So.2d at page 466:
“The contract cannot be fairly construed to vest in the S&WB the right to refuse to compensate the other party for damages caused by its own failure to properly perform the contract.”
Additionally, we note that under its contract the board obligated itself not only to furnish the plans and specifications in accordance with which the work was required to be done, but also to furnish the supervision and inspection of the work by its engineers. It did both of these, even to the point of refusing to change the specifications to provide for pipe of additional strength when the need for such change *132 was suggested by the pipe manufacturer and others. This was far beyond the mere approval or disapproval of plans involved in the usual and customary work of the Board.
Nor can we agree with appellant’s third contention. The Board has the attributes of a corporation and can sue and be sued. The power to contract necessarily carries with it the obligation to perform under the contract. While the Board may successfully plead immunity in a proper tort case, such immunity does not extend to liability ex contractu.
Nor do we agree that the contract was without consideration insofar as the Board was concerned. This was a tri-party contract among the Board, Pontchartrain and the City of New Orleans for, as far as the record shows, the mutual benefit of all. The City intended to establish a park for colored citizens in the area and it is fair to say that such intent was a reason for the tri-party contract. In connection with this proposed park, the Board certainly would have incurred expenses involving installation of such facilities as came under its jurisdiction. It was relieved of some of this burden by Pontchartrain. We find that there was consideration on the part of the Board.
We now address ourselves to the appeal by McCoy. Counsel for McCoy point to LSA-R.S. 13:4531, which provides in part that “In all cases of appeal to the Supreme Court the party appellant shall be primarily liable for all costs occasioned by the appeal. * * * ”, and argues that since the law fixes the amount of the bond which the appellant must furnish in order to perfect the appeal, and without which bond it could not appeal, the premium paid for the appeal bond is an expense “occasioned” by the appeal and the amount of this premium should be taxed as cost. We do not agree.
There are many items, in the broad sense of the word, “occasioned” by the appeal, which are not taxable as costs. For example, the amount expended for the printing of a brief required by rules of court are not so taxable, (Cline v. Crescent City R. Co., 42 La.Ann. 35, 7 So. 66), nor are attorney’s fees in the absence of special statute or contract (State ex rel. Landry v. Morning Star Benevolent Ass’n, 15 La.App. 419, 132 So. 159; see also Scurria v. Russo, 134 So.2d 679).
Counsel has not called our attention to any law which provides, or to any jurisprudence which holds, that the amount of premium paid for an appeal bond is taxable as cost, nor do we know of any such law or jurisprudence. We are in agreement with the trial court in dismissing the rule.
For the reasons assigned, the judgment appealed from is affirmed. '
Affirmed.